**In re Charles Newton BAIRD, Joseph Allen Baird, Sharon Ann Baird, d/b/a Baird Brothers, Debtor(s).**

**Russ WILKEY, Trustee, Plaintiff,**

v.

**UNION BANK & TRUST COMPANY, Farmers State Bank, Charles Newton Baird and Joseph Allen Baird and Sharon Ann Baird, d/b/a Baird Brothers, Defendants.**

**Bankruptcy Nos. 4–82–00498, 4–82–000499.**
**Adv. No. 4–83–0107.**

United States Bankruptcy Court, W.D. Kentucky.

July 9, 1986.

Russ Wilkey, Owensboro, Ky., for plaintiff/trustee.

Michael A. Fiorella, Owensboro, Ky., for defendant/Farmers State Bank.

Sidney H. Hulette, Morganfield, Ky., for defendants.

Gary Gibbs, Henderson, Ky., for debtors/Bairds.

## MEMORANDUM OPINION

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

Two issues are raised by the present motion for summary judgment, both having to do with the effect of a bankruptcy filing on statutes of limitations. The more novel question presented is whether the pendency of a bankruptcy proceeding for several months has the effect of prolonging a state statute of limitations for an equivalent length of time, after the bankruptcy is dismissed.

On March 24, 1982, Charles and Joseph Baird, d/b/a Baird Brothers, renewed a $100,000 unsecured note from the Farmers State Bank. Under the terms of the loan renewal the Bank advanced the Bairds an additional $30,000 and took a security interest in livestock and farm machinery. Two weeks later the debtors renewed the now secured note and obtained an additional $45,000. The Bank retained its security interest in the livestock and machinery.

On April 22, 1982, the Bairds filed Chapter 11 reorganization petitions. These petitions were dismissed on the motion of creditors on October 5, 1982.

Seventy-two days later, on December 16, 1982, the Bairds filed petitions under Chapter 7 of the Bankruptcy Code. Russ Wilkey was appointed trustee in both cases and filed this adversary proceeding seeking to set aside the Bairds' security interest to the Bank on March 24, 1982, as a preference either under bankruptcy law or under applicable state law. The bank moves for summary judgment on both counts.

■ Initially we address the federal preference question. The Bank argues that the transaction clearly occurred outside the 90–day preference period provided for by 11 U.S.C. § 547. The trustee concedes that the granting of the security interest occurred more than 90 days prior to the filing of the debtor's Chapter 7 cases, but contends that the running of the 90–day period was "tolled" during the entire pendency of the debtor's earlier Chapter 11 petition.

We must sustain the Bank's motion. Even if we adopted the trustee's "tolling" argument—that the § 547 preference period was tolled during the life of the debtor's Chapter 11 cases—the transfer still oc-

curred outside the 90–day preference period, and therefore cannot be avoided. Assuming the 90–day preference period was tolled for the duration of the debtors' Chapter 11 petition, the preference still took place 100 days before the debtors filed their Chapter 7 petitions. Ignoring the period of time the debtors operated under Chapter 11, 28 days passed between March 25, 1982 (the day the security interest was created), and April 22, 1982 (the day the debtors filed their Chapter 11 petitions); and 82 days passed between October 5, 1982 (the day the Chapter 11 proceeding was dismissed) and December 16, 1982 (the day they filed their Chapter 11 petitions.)

■ The Bank also seeks summary judgment on the trustee's state law claim, asserted under 11 U.S.C. § 544, on the ground that it is barred by Kentucky's six-month statute of limitations.[1] The trustee concedes that he commenced this action more than six months after the alleged preference took place, but argues that because the statute of limitations was tolled by 11 U.S.C. § 108(c) during the period of the debtor's earlier Chapter 11 proceedings, his suit was timely filed.

Curiously enough, for a district which has seen numerous multiple filings by individual farmer-debtors, the issue seems to be one of first impression. Our beginning point is 11 U.S.C. § 108(c), which provides that:

(c) Except as provided in Section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under Section 1301 of this title, and such period has not expired before the date of the filing of the petition, *then such period does not expire until the later of—*

(1) the end of such period, *including any suspension of such period occurring on or after the commencement of the case;* or

(2) 30 days after notice of the termination or expiration of the stay under Section 362, 722 or 1301 of this title, as the case may be with respect to such claim. [emphasis added]

The trustee maintains that the wording of 11 U.S.C. § 108(c)(1) means that the running of a statute of limitations is suspended during the pendency of a debtor's bankruptcy. This position finds apparent support in the case of *In re MartinTrigona,*[2] where the Second Circuit Court of Appeals stated:

Appellant 658 Ridge Road, Inc., also argues that the statute of limitations "may" have barred the complaint, because the three-year statute of limitations for tortious actions, Conn.Gen.Stat. § 52–577 applied, and the trustee did not bring this action until 1983, five years after the allegedly fraudulent conveyance. This argument ignores the tolling of the statute of limitations on December 2, 1980, when the bankruptcy petition was filed. See 11 U.S.C. § 108(c)(1982). The complaint was timely filed.[3]

The bank, on the other hand, contends that Section 108(c) does not "toll" the running of a statute of limitations, but rather *extends* the statute of limitations until 30 days after the lifting or expiration of the automatic stay. This interpretation of Section 108(c) is more compatible with the legislative history of the Section, which states that:

Subsection (c) extends the statute limitations for creditors. Thus, if a creditor is stayed from or continuing an action against the debtor because of the bankruptcy case, then the creditor is permitted an additional 30 days after notice of the event by which the stay is terminated, whether that event be relief from the automatic stay under proposed 11 U.S.C.

---

1. *See* Kentucky Revised Statutes 378.060; .070 (1984).

2. 763 F.2d 503 (2d Cir.1985).

3. *Id.* at 506.

§ 362 or 1301, the closing of the bankruptcy case (which terminates the stay), or the exception from discharge of the debts on which the creditor claims.[4]

. . . . .

The House amendment adopts *Section 108(c)(1) of the Senate amendment which expressly includes any special suspensions of statutes of limitation periods on collection outside bankruptcy* when assets are under the authority of a court. For example, Section 6503(b) of the Internal Revenue Code suspends collection of tax liabilities while the debtor's assets are in the control or custody of a court, and for six months thereafter. [Emphasis added] [5]

We hold that Section 108(c) of the bankruptcy Code *extends* a creditor's right to bring an action through the pendency of a debtor's bankruptcy case only for 30 days after the automatic stay expires by operation of law or is lifted by order of court. Section 108 does not in and of itself *suspend* the running of a statute of limitations. The reference in Section 108(c) to "suspension" is not to the operation of bankruptcy law but to other, specialized "suspension" statutes, such as the Internal Revenue Code section cited in the legislative history.

Our decision is not inconsistent with the Second Circuit's *Martin-Trigona* case due to our widely different fact situation. In *Martin-Trigona* the court was dealing with the question of whether a state statute of limitations had expired during the pendency of a *single* ongoing bankruptcy case. Since the state statute had not expired prior to the filing of the bankruptcy petition, the Court correctly held, Section 108(c) prevented the statute from expiring after the case was commenced.[6] In this case we were faced with two *separate* bankruptcies, the first of which was filed before the Kentucky six-month statute had

expired and which was dismissed well after the six-month period had run. In this situation, Section 108(c) extended the time in which a preference action could be brought only until November 4, 1982, 30 days after the Chapter 11 dismissal—a meaningless extension, we admit, because obviously on November 4 there was no bankruptcy proceeding within which such a suit could be brought. By the time the debtor's Chapter 7 petitions were filed in December, 1982, the trustee was already barred from asserting a cause of action under Kentucky preference law.

We are aware that today's opinion illuminates a gap period between multiple filings during which potential preference actions may be lost. But the language of the law is clear, and only creditor vigilance may be used to prevent such results.

In conclusion, we grant the bank's motion for summary judgment on both the trustee's Section 547 and state law preference claims. On the facts of the case we hold that the alleged preferential transfer occurred more than 90 days before the debtors filed their Chapter 7 petitions, and that the Kentucky statute of limitations on preferential conveyance actions, as extended by 11 U.S.C. § 108(c), expired before the debtors filed their Chapter 7 petitions.

An order reflecting these findings and setting a pretrial hearing on the remainder of the trustee complaint will be entered with this opinion.

---

**4.** House Report No. 95–595, 95th Cong., 1st Sess. 318 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6275.

**5.** 124 Cong.Rec. H 11, 109 (Sept. 28, 1978); S17, 426 (Oct. 6, 1978).

**6.** *See* 11 U.S.C. § 108(c) (1982). This does not mean that there are no time limitations on a trustee bringing a preference action. *See* 11 U.S.C. § 546 (1982).