Denis F. THURMAN, Petitioner,

v.

Joseph A. TAFOYA, Therese H. Tafoya, a/k/a Therese H. Thorne, Respondents.

No. 94SC106.

Supreme Court of Colorado, En Banc.

May 22, 1995.

Heggemeier & Stone, P.C., Roger A. Jatko, Ronald R. Heggemeier, Parker, for petitioner.

Chris A. Porter, Wheat Ridge, for respondents.

Justice LOHR delivered the Opinion of the Court.

We granted certiorari to review the Colorado Court of Appeals' opinion in *Thurman v. Tafoya*, 878 P.2d 7 (Colo.App.1993), concluding that a promissory note held by Denis F. Thurman, the petitioner, and executed by Joseph A. Tafoya and Therese H. Tafoya, the respondents, was unenforceable due to the expiration of the applicable statute of limitations period. Thurman argued that 11 U.S.C. § 108(c) (1988) tolled the statute of limitations period for enforcement of the note for a period equal to the amount of time the Tafoyas were under bankruptcy court protection. Alternatively, Thurman claimed that because the Tafoyas had requested subordination of the lien securing the note to a lien securing another debt, they were equitably estopped from asserting a statute of limitations defense. The court of appeals held that 11 U.S.C. § 108(c) did not toll the statute of limitations period and that the Tafoyas were not equitably estopped from raising the statute of limitations defense. We agree with the court of appeals that neither 11 U.S.C. § 108(c) nor the doctrine of equitable estop-

pel affects the statute of limitations period for enforcement of Thurman's note. We therefore affirm the judgment of the court of appeals.

## I.

We derive the following facts from the parties' pleadings and briefs filed in the trial court. On March 20, 1986, Joseph A. Tafoya and Therese H. Tafoya (the Tafoyas) executed a promissory note payable to Denis F. Thurman in the amount of $22,380.00. The note was secured by a deed of trust on property owned by Therese Tafoya. The note provided for scheduled monthly payments in April and May of 1986 and specified that the entire principal and accrued interest would become due and payable on June 20, 1986. The Tafoyas have made no payments on the note and contest the validity of the note.

On September 25, 1987, Therese Tafoya filed for personal bankruptcy.[1] She remained under the protection of the bankruptcy court until April 18, 1988, a period of 204 days. Joseph Tafoya filed for personal bankruptcy on May 3, 1990. He remained under the protection of the bankruptcy court until December 17, 1990, a period of 228 days. During these periods, Thurman did not attempt to enforce his note or deed of trust. On December 30, 1992, approximately two years after Joseph Tafoya's bankruptcy action ended, Thurman filed a complaint in Jefferson County District Court seeking to enforce the note and foreclose the deed of trust.

In response, the Tafoyas filed a motion to dismiss Thurman's complaint. *See* C.R.C.P. 12(b)(5). They disputed the validity of the note and asserted that Thurman's action was time-barred by the six year statute of limitations period prescribed by section 13–80–103.5, 6A C.R.S. (1987), and section 13–80–108(4), 6A C.R.S. (1987).[2] The Tafoyas ar-

---

1. *See generally* 11 U.S.C. § 301 (1988); 11 U.S.C. §§ 701–728 (1988).

2. Section 13–80–103.5 states in pertinent part:
 (1) The following actions shall be commenced within six years after the cause of action accrues, and not thereafter:

(a) All actions to recover a liquidated debt or an unliquidated, determinable amount of money due to the person bringing the action, all actions for the enforcement of rights set forth in any instrument securing the payment of or evidencing any debt, and all actions of replevin to recover the possession of personal property

gued that Thurman's six year period for bringing suit accrued on June 20, 1986, the date payment was due on the note. Thus, Thurman was required to initiate suit on or before June 20, 1992. Because Thurman did not file his complaint until December 30, 1992, more than six months after the limitations period expired, the Tafoyas argued that Thurman's suit was time-barred.

Thurman filed a response to the Tafoyas' motion to dismiss. Thurman argued that pursuant to 11 U.S.C. § 108(c) (1988) (hereinafter, section 108(c)) of the Federal Bankruptcy Code the six year statute of limitations period was tolled while the Tafoyas were in personal bankruptcy.[3] Thurman argued that the statute of limitations should be extended for 432 days, the sum of the periods of time the Tafoyas were under bankruptcy court protection. Thus, Thurman contended that his claim was not time-barred.[4]

In addition, Thurman filed a motion for partial summary judgment pursuant to C.R.C.P. 56 requesting resolution of the statute of limitations issue. In this motion, Thurman again argued that section 108(c) tolled the six year statute of limitations governing his cause of action. In the alternative, Thurman argued that the Tafoyas should be equitably estopped from raising the statute of limitations defense. According to Thurman, in July of 1987, Therese Tafoya asked Thurman to subordinate his lien securing the note encumbering her property to the lien of another debt in order to facilitate refinancing. Thurman claimed that the request for subordination was an acknowledgment by the Tafoyas of the note's validity and equitably estopped them from asserting a statute of limitations defense.

In response to Thurman's motion for partial summary judgment, the Tafoyas argued

that section 108(c) did not toll the statute of limitations period for enforcement of the note. Further, they asserted that their personal bankruptcy actions did not prejudice Thurman's enforcement of the note. As evidence thereof, the Tafoyas maintained that Thurman had made no effort to collect on the promissory note or foreclose the deed of trust prior to or during the bankruptcy proceedings. The Tafoyas also opposed Thurman's equitable estoppel claim. The Tafoyas argued that they had never made any representations or promises regarding the validity of the promissory note or the deed of trust. In addition, the Tafoyas reaffirmed that they continually had disputed the validity of these instruments.

Based upon the parties' submissions, the trial court issued its order. First, the court determined that the limitations period on Thurman's action had run and was not tolled by the Tafoyas' personal bankruptcy proceedings. The court reasoned that the bankruptcy proceedings had not adversely affected Thurman's efforts to enforce his rights under the note. The fact that the Tafoyas were in bankruptcy for some portion of the six year period did not automatically toll the running of the statute of limitations. Second, the trial court rejected Thurman's equitable estoppel claim. Accordingly, the court dismissed Thurman's complaint and entered judgment for the Tafoyas. Thurman appealed the judgment to the Colorado Court of Appeals.

The court of appeals upheld the trial court's ruling that Thurman was time-barred from enforcing the note. The court of appeals determined that the limitations period under section 13–80–103.5 expired six years after the note matured and was not tolled by section 108(c). *Thurman,* 878 P.2d at 9–11.

encumbered under any instrument securing any debt;....

Under § 13–80–108(4), "[a] cause of action for debt, obligation, money owed, or performance shall be considered to accrue on the date such debt, obligation, money owed, or performance becomes due."

3. Section 108(c) provides creditors with an extension of time for commencing suits against debtors who are involved in bankruptcy proceedings. See Part II, *infra.*

4. Thurman also argued that a statute of limitations defense is not a proper ground for a motion to dismiss; rather, the expiration of a statute of limitations period should be pled as an affirmative defense. The trial court and the court of appeals both rejected this argument. We did not grant certiorari on this issue and do not address it.

Furthermore, the court of appeals affirmed the trial court's ruling that the Tafoyas' request for subordination did not establish an equitable estoppel claim. It held that "the subordination did not reflect the type of affirmative conduct required to establish an equitable estoppel claim." *Id.* at 11. Thus, the court of appeals affirmed the trial court's dismissal of the case.

■■ Thurman sought certiorari review by this court and we granted certiorari to address the following two issues:

Whether the court of appeals erred in holding that the Bankruptcy Code, and especially 11 U.S.C. § 108(c) (1988), did not operate to toll [the] Colorado limitations period for the enforcement of notes set forth in section 13–80–103.5, 6A C.R.S. (1987).

Whether the court of appeals erred in affirming the trial court's holding that defendants in an action to foreclose a deed of trust are not equitably estopped from raising the six-year limitations defense when they have, less than six years before the action was filed, demanded and received a subordination of said deed of trust, thereby specifically acknowledging the validity of their debt within the six-year limitation period.

We hold that 11 U.S.C. § 108(c) does not operate to toll the statute of limitations period for a period of time equal to the amount of time a debtor is under bankruptcy court protection. Rather, section 108(c) extends statute of limitations periods that expire while a bankruptcy stay is in effect for thirty days after the creditor receives notice that the stay has been lifted. Because the statute of limitations period for enforcement of Thurman's note did not expire while the Tafoyas were under the protection of the bankruptcy court, section 108(c) did not provide him with any extra time within which to bring a claim. We further hold that the subordination agreement, in and of itself, did

not constitute the kind of affirmative act necessary to establish an equitable estoppel claim. Therefore, we affirm the court of appeals' determination that Thurman is time-barred from enforcing his note against the Tafoyas.

## II.

■■ When an individual files a bankruptcy petition, 11 U.S.C. § 362 (1988) of the Federal Bankruptcy Code provides an automatic stay of all proceedings against the debtor. This stay prevents claimants from commencing or continuing an action against the debtor. In order to protect claimants from having potential actions expire while a bankruptcy stay is in effect, Congress enacted 11 U.S.C. § 108(c) (1988). Section 108(c) provides:

Except as provided in section 524 of this title [11], if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor ... and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

(1) the end of such period, *including any suspension of such period* occurring on or after the commencement of the case; or

(2) 30 days after notice of the termination or expiration of the stay ... with respect to such claim.

(Emphasis added). Section 108(c) protects claimants by extending any applicable time period for commencing suits until after the bankruptcy stay is lifted. The issue we must decide is the proper scope of this extension.

Thurman argues that section 108(c)(1) tolls the running of any applicable statute of limitations for the entire period of the bankruptcy proceedings.[5] Under Thurman's analysis, a claimant is entitled to an extension of time equal to the duration of the bankruptcy stay.

---

5. In defining the verb "toll," Black's Law Dictionary states: "To suspend or stop temporarily as the statute of limitations is tolled during the defendant's absence from the jurisdiction and during the plaintiff's minority." Black's Law Dictionary 1488 (6th ed. 1990). Thurman uses the word toll in the context of section 108(c) to mean that the statute of limitations is suspended or does not continue to run. Unless otherwise noted, throughout this opinion we use the word "toll" to mean suspend.

He interprets the phrase "including any suspension of such period" in section 108(c)(1) as incorporating the stay provision of the Bankruptcy Code. Thus, according to Thurman, section 108(c)(1) means that any applicable limitations period is tolled for the entire period of "suspension" caused by the automatic stay provision. We disagree.

 To resolve this case, we must rely on well settled principles of statutory construction. The primary goal in interpreting statutes is to give effect to the intent of the legislature. To do so, courts interpret statutory terms in accordance with their plain and ordinary meaning. *Bertrand v. Board of County Comm'rs,* 872 P.2d 223, 228 (Colo. 1994); *Scoggins v. Unigard Ins. Co.,* 869 P.2d 202, 205 (Colo.1994). In addition, a statute should be read and considered as a whole in order to give consistent, harmonious, and sensible effect to all of its parts. *McCarty v. People,* 874 P.2d 394, 398 (Colo. 1994); *People v. Andrews,* 871 P.2d 1199, 1201 (Colo.1994). If the statute is ambiguous, courts may consider prior enactments of the statute as well as the statute's legislative history as indicative of legislative intent. *General Elec. Co. v. Niemet,* 866 P.2d 1361, 1364 (Colo.1994); *City of Ouray v. Olin,* 761 P.2d 784, 788 (Colo.1988). Moreover, courts must consider the underlying purpose or policy of the statutory enactments when determining the legislative intent. *Gambler's Express Inc. v. Public Utilities Comm'n,* 868 P.2d 405, 410 (Colo.1994); *Matter of Estate of Royal,* 826 P.2d 1236, 1238 (Colo.1992).

 By its terms, section 108(c) does not toll any applicable statute of limitations period. Instead, the statute of limitations period continues to run. If the limitations period expires while the bankruptcy stay is in effect, then section 108(c) provides creditors with an extra thirty days to pursue a claim once the creditor receives notice that the bankruptcy stay has been lifted. *See* 11 U.S.C. § 108(c)(2). The phrase "suspension of such period" in section 108(c)(1) does not operate to stay the running of statute of limitations periods. Instead, this section incorporates suspension provisions that are expressly prescribed by other federal or state statutes.[6]

Both the Second Circuit Court of Appeals and the Fifth Circuit Court of Appeals support our conclusion that the plain language of section 108(c) does not operate to suspend the running of statute of limitations periods during the pendency of a bankruptcy stay. *See Rogers v. Corrosion Products, Inc.,* 42 F.3d 292, 297 (5th Cir.1995) ("[w]e base our decision on the plain words of the statute and find that § 108(c) does not create a separate tolling provision"); *Aslanidis v. United States Lines, Inc.,* 7 F.3d 1067, 1073 (2d Cir.1993) (finding plain meaning of section 108(c) does not provide for tolling of any externally imposed time bars). Thus, these courts have held that section 108(c) does not toll statute of limitations periods for the entire period of the bankruptcy stay. *Rogers,* 42 F.3d at 297; *Aslanidis,* 7 F.3d at 1073. Rather, section 108(c) simply provides creditors with a thirty day period for commencing suits after the stay is lifted for any statute of limitations that expires while the bankruptcy stay is in effect.

This interpretation of section 108(c) gives full effect to the statute as a whole. Section 108(c)(2) provides that if the applicable stat-

---

**6.** 26 U.S.C. § 6503(b) (1988) of the Internal Revenue Code provides an example of one such suspension provision. Section 6503(b) states:

The period of limitations on collection after assessment prescribed in section 6502 shall be suspended for the period the assets of the taxpayer are in the control or custody of the court in any proceeding before any court of the United States or of any State or of the District of Columbia, and for 6 months thereafter.

This provision, in conjunction with § 108(c)(1), suspends the running of the six year statute of limitations period for collection of taxes for any period in which the taxpayer's assets are under the control of the bankruptcy court. *In re West,*

5 F.3d 423, 426 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct 1830, 128 L.Ed.2d 459 (1994); *In re Brickley,* 70 B.R. 113, 115 (Bankr. 9th Cir.1986). State laws may also suspend statute of limitations periods during bankruptcy proceedings. *See, e.g., Turner and Boisseau, Chartered v. Lowrance,* 18 Kan. App.2d 332, 852 P.2d 517, 519–20 (1993) (Kansas statute tolling statute of limitations while action stayed by injunction tolled limitations period while automatic stay was in effect); *Peterson v. Texas Commerce Bank–Austin,* 844 S.W.2d 291, 295 (Tex.Ct.App.1992) (state's common law tolls the statute of limitations period through the suspension provision of section 108(c)(1)).

ute of limitations period expires during the pendency of a bankruptcy stay, a creditor has thirty days to commence suit after receiving notice of the termination or expiration of the stay. If we were to adopt Thurman's interpretation of section 108(c)(1) and conclude that section 108(c)(1) suspends a statute of limitations for the duration of a bankruptcy stay, it is unclear how a statute of limitations period could ever expire during the stay. Section 108(c)(2) clearly anticipates the expiration of statute of limitations periods during bankruptcy stays. Therefore, an interpretation of section 108(c)(1) that always suspends statute of limitations periods is inconsistent with section 108(c)(2) and renders that latter section meaningless. *O'Lane v. Spinney*, 110 Nev. 496, 874 P.2d 754, 756 (1994).

Because we find the meaning of section 108(c) to be apparent from the words of the statute, it is not strictly necessary to consider the statute's legislative history. However, examination of the legislative history of section 108(c) provides further support for our interpretation. The predecessor to section 108(c), 11 U.S.C. § 29(f) (1976), provided specifically for suspension of statute of limitations periods while an individual is in bankruptcy.[7] *See Grotting v. Hudson Shipbuilders, Inc.*, 85 B.R. 568, 570 (Bankr.W.D.Wash. 1988); 2 Lawrence P. King, *Collier on Bankruptcy* § 108.01 (15th ed. 1994). If Congress had intended section 108(c)(1) to do the same, it would have stated so expressly. *See Aslanidis*, 7 F.3d at 1073; *Mamer v. Apex R.E. & T.*, 852 F.Supp. 870, 872 (E.D.Mo. 1994); *Grotting*, 85 B.R. at 570. The fact that Congress did not do so lends further support to our conclusion that section 108(c) does not suspend the running of a statute of limitations period while a debtor is involved in bankruptcy proceedings.

Moreover, the legislative history of section 108(c) supports our interpretation of the phrase "including any suspension of such period" as referring to federal and state statutes outside the Bankruptcy Code. When referring to the adoption of the "suspension" language in section 108(c)(1), Representative Don Edwards, Chairman of the Subcommittee on Civil and Constitutional Rights of the House Committee on the Judiciary, stated:

> The House amendment adopts section 108(c)(1) of the Senate amendment which expressly includes any special suspensions of statutes of limitation periods on collection outside bankruptcy when assets are under the authority of a court. For example, Section 6503(b) of the Internal Revenue Code suspends collection of tax liabilities while the debtor's assets are in the control or custody of a court, and for 6 months thereafter.

124 Cong.Rec.H. 11089 (daily ed. Sept. 28, 1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6488. This statement clearly refers to special suspension statutes of limitations that exist outside the Bankruptcy Code. It then specifically refers to section 6503(b) of the Internal Revenue Code as an example. *See supra* note 6. The statement does not indicate that section 108(c)(1) in and of itself suspends statute of limitations periods. *Aslanidis*, 7 F.3d at 1073; *In re Baird*, 63 B.R. 60, 63 (Bankr.W.D.Ky.1986); *accord* 2 Lawrence P. King, *Collier on Bankruptcy* §§ 108.02, 108.04 (15th ed. 1994). Moreover, there would be little need to refer to suspension statutes outside the Bankruptcy Code if section 108(c)(1) automatically suspended limitations periods.

Finally, policy concerns support our interpretation of section 108(c). One goal of the Bankruptcy Code is the fair and expeditious

---

**7.** 11 U.S.C. § 29(f) (1976), the predecessor to section 108(c) provided:

> The operation of any statute of limitations of the United States or of any State, affecting the debts of a bankrupt provable under this title, *shall be suspended during the period from the date of the filing of the petition in bankruptcy* (1) until the expiration of thirty days after the date of the entry of an order denying his discharge; or (2) if he has waived or lost his right to a discharge, then until the expiration of

thirty days after the filing of such waiver or loss of such right or, in the case of a corporation, if no application for a discharge is filed within the period of six months after the adjudication, then until the expiration of thirty days after the end of such period; or (3) until thirty days after the dismissal of the bankruptcy proceedings, whichever may occur first. (Emphasis added) (repealed by Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, Title I, § 101, 92 Stat. 2682 (codified at 11 U.S.C.)).

administration of a bankrupt's estate. If section 108(c) suspends statute of limitations periods, settlement of claims could be extended for many years due to lengthy bankruptcy proceedings. This could lead to uncertainty as to when claims will expire as well as to when a debtor's estate will be settled. *Grotting*, 85 B.R. at 570; *Swartzman v. Harlan*, 535 So.2d 605, 608 (Fla.Dist. Ct.App.1988); *see also Aslanidis*, 7 F.3d at 1074 ("Statutes of limitations are designed to ensure fairness to defendants and to prevent surprises brought about by the attempt to breathe life into causes that have lain dormant for so long that proof, witnesses, and memories all, have disappeared.").

In addition, creditors are not unduly burdened by an interpretation of section 108(c) that does not suspend statute of limitations periods. Creditors are able to move a bankruptcy court to lift the stay, file after the bankruptcy proceedings are ended if there is still time to run on the applicable statute of limitations period, or file within thirty days after the stay is lifted. Section 108(c) does not preclude a creditor from bringing suit, it only sets equitable time limits within which to do so.

Thurman relies on two United States circuit court of appeals cases, *In re Morton*, 866 F.2d 561 (2d Cir.1989),[8] and *In re Hunters Run Ltd. Partnership*, 875 F.2d 1425 (9th Cir.1989), as support for his contention that section 108(c) suspends statute of limitations periods during the pendency of a bankruptcy stay. Both these cases involve the status of liens whose enforcement period expired while a bankruptcy stay was in effect. Although the courts in both cases conclude that section 108(c) tolls statute of limitations periods during the bankruptcy stay, the courts do not determine to what extent the statute of limitations period is extended after the bankruptcy stay is lifted. Thus, the court's use of the word "toll" in conjunction with section 108(c) is ambiguous. Tolling may mean that the applicable statute of limitations period is suspended for the period of bankruptcy and begins to run again only after the bankruptcy stay is lifted. Alternatively, tolling may mean that the statute of limitations period is extended until the bankruptcy stay is lifted. *See Rogers*, 42 F.3d at 296–97 (recognizing ambiguity and finding that courts in *Morton* and *Hunters Run* did not decide whether "tolling" meant that the time period ceased to run, or that thirty-day grace period existed if time period expired during stay).

Thus, a more narrow reading of *Morton* and *Hunters Run* supports our conclusion that section 108(c) acts to ensure that creditors do not lose the opportunity to enforce their claims because of the expiration of a statute of limitations period while a bankruptcy stay is in effect. The cases are at best ambiguous as to the amount of time section 108(c) adds to statute of limitations periods after the bankruptcy stay is lifted. Due to this ambiguity, we do not find these cases persuasive or supportive of Thurman's position.[9]

In summary, we hold that section 108(c) does not "toll" or suspend the running of a statute of limitations period for the amount of time a debtor is under the protection of a bankruptcy court. The language in section 108(c)(1) referring to "suspensions" does not incorporate the stay provision of the Bank-

---

**8.** The holding in *Morton* has been limited by *Aslanidis*, 7 F.3d at 1073–74. In *Aslanidis*, the Second Circuit Court of Appeals held that *Morton* did not suspend the running of the statute of limitations period; rather, *Morton* merely found that the statute of limitations for enforcement of a judgment lien could not expire during the pendency of a bankruptcy stay. *Id.*

**9.** Thurman also relies on *Garbe Iron Works, Inc. v. Priester*, 99 Ill.2d 84, 75 Ill.Dec. 428, 457 N.E.2d 422 (1983), and *Major Lumber v. G & B Remodeling*, 817 S.W.2d 474 (Mo.Ct.App.1991), as support for his position. In these cases, the courts held that when a party files bankruptcy, the amount of time a lien claimant has to file suit is extended by the number of days the automatic stay is in effect. *Garbe*, 75 Ill.Dec. at 430, 457 N.E.2d at 424 (extending limitations period for 133 days, amount of time debtor was under protection of bankruptcy stay); *Major Lumber*, 817 S.W.2d at 478 (extending six month statute of limitations for period of time debtor is under protection of bankruptcy stay). For the reasons stated above, we reject the holding in these cases and rely on the cases holding that section 108(c) does not in and of itself extend a statute of limitations for the period of time the debtor is in bankruptcy. *See supra* pp. 10–15; *see, e.g., Rogers*, 42 F.3d 292; *Aslanidis*, 7 F.3d 1067; *Grotting*, 85 B.R. 568; *In re Baird*, 63 B.R. 60.

ruptcy Code. Rather, this language refers to federal or state laws that suspend statute of limitations periods while debtors are under bankruptcy court protection. Finally, we hold that if a statute of limitations period expires during the pendency of a bankruptcy stay and no other federal or state suspension laws are applicable, section 108(c) provides a creditor with an additional thirty days to initiate a suit after notice of termination of the stay.

■ Pursuant to section 13–80–103.5, Thurman had until June 20, 1992, to enforce his note. The Tafoyas' bankruptcy actions ended in December of 1990. The statute of limitations for enforcement of the note did not expire while the Tafoyas were under the protection of the bankruptcy court. Therefore, section 108(c) does not affect the amount of time Thurman had to file suit.[10] Because Thurman did not file suit until December 30, 1992, more than six months after the applicable statute of limitations period expired, Thurman's suit is time-barred. Therefore, we affirm the court of appeals' determination that section 108(c) does not extend the statute of limitations period for Thurman to initiate suit and conclude that his action is time-barred.

### III.

We now consider Thurman's claim that the Tafoyas should be equitably estopped from raising the statute of limitations as a defense. Thurman argues that the Tafoyas acknowledged the validity of the note when they asked Thurman to subordinate his lien on Therese Tafoya's property to the lien of another encumbrance. According to Thurman, this request equitably estops the Tafoyas from disputing the validity of the note and raising a statute of limitations defense.

■ Application of the doctrine of equitable estoppel may prevent the assertion of a statute of limitations defense. *Klamm Shell v. Berg,* 165 Colo. 540, 441 P.2d 10 (1968). To invoke the doctrine of equitable estoppel, a party who relies to his detriment on an affirmative promise must show that the promisor may have reasonably expected to induce action or forbearance of a material character. *Ralston Oil and Gas Co. v. July Corp.,* 719 P.2d 334, 340 (Colo.App.1985); *Mountain Stone Co. v. H.W. Hammond Co.,* 39 Colo.App. 58, 61, 564 P.2d 958, 960 (1977). Moreover, the claimant must show that reasonable reliance on these assertions discouraged the claimant from bringing suit within the applicable time period. *See Strader v. Beneficial Finance Co.,* 191 Colo. 206, 211–12, 551 P.2d 720, 724 (1976) (where a party contributes to the running of the statute of limitations, the doctrine of equitable estoppel will prevent raising that defense). A party, however, may not rely on the mere non-committal acts of another in order to establish equitable estoppel. *Mountainwood Condominium Homeowners Ass'n v. Cal–Colorado,* 765 P.2d 1066, 1069 (Colo.App.1988) (plaintiff's reliance on non-committal acts does not establish equitable estoppel); *Lee v. City and County of Denver,* 29 Colo.App. 256, 261, 482 P.2d 389, 392 (1971) (plaintiff not entitled to rely on non-committal contacts with insurance company, thus, equitable estoppel was not relevant to action).

■ Thurman has not presented any evidence that indicates the Tafoyas induced him to refrain from filing suit. Thurman mainly argues that the request for subordination of the lien, in and of itself, was an acknowledgment of the validity of lien. The subordination agreement, however, does not contain any express acknowledgement of the lien's validity; nor does Thurman allege that he signed the subordination agreement in exchange for an acknowledgement of the validity of the note and deed of trust.

Moreover, the Tafoyas have presented uncontradicted evidence that they continually have protested the validity of the promissory note. As of the date of the filing of the present action, the Tafoyas had never made a payment on the note despite the fact that the note called for monthly payments of $205.15 in April and May of 1986 and payment in full on June 30, 1986. In addition, the Tafoyas'

---

**10.** Thurman does not argue that Colorado law suspends statute of limitations periods while a debtor is under bankruptcy court protection; thus, section 108(c)(1) is inapplicable to this case.

lawyer sent a letter dated April 24, 1987, to Thurman specifically contesting the validity of the note. Finally, the Tafoyas have submitted affidavits stating that they have made no affirmative promise or representation as to the validity of the note.

Thurman has not presented any evidence supporting his claim that the Tafoyas induced him to refrain from enforcing the promissory note. The subordination agreement, in and of itself, does not represent the kind of affirmative act necessary to establish a claim of equitable estoppel. Therefore, we affirm the decision of the court of appeals holding that the Tafoyas are not equitably estopped from raising the statute of limitations as a defense.

## IV.

In summary, we conclude that Thurman's action against the Tafoyas is time-barred. Under the circumstances of this case, 11 U.S.C. § 108(c) did not extend the period of time available to Thurman to enforce his note. In addition, Thurman has not established a valid equitable estoppel claim against the Tafoyas. Therefore, we affirm the judgment of the court of appeals.

SCOTT, Justice, does not participate.